PARKER, Acting Chief Judge.
Velma Dee Campbell appeals the trial court’s order of modification of final judgment of dissolution of marriage reducing James P. Campbell’s rehabilitative alimony obligations. Velma Campbell argues that the evidence did not support a finding of permanent, unanticipated, or substantial change in circumstances. We reverse.
The couple was married in 1985. Dr. Campbell filed a petition for dissolution of marriage in February 1992. The trial court entered the final judgment of dissolution in March 1993. At the time of dissolution, Velma Campbell was forty-eight years of age and Dr. Campbell, a cardiovascular surgeon, was fifty-one years of age. The final judgment of dissolution consists of a two-page order with an attached forty-page transcript containing the terms of the marital settlement agreement to which the parties stipulated. The final judgment approves, ratifies, confirms, and adopts the settlement agreement as recited by the attorneys at the final hearing on dissolution and transcribed by the court reporter.
The single issue before this court involves an order modifying the rehabilitative alimony awarded to Velma Campbell. In addition to other obligations in the final judgment of dissolution, Dr. Campbell agreed to pay Velma Campbell rehabilitative alimony for a period of six years at $5575 per month, commencing March 1, 1993. Five months after the trial court entered the final judgment of dissolution, Dr. Campbell filed a petition to modify the alimony provisions in the final judgment, alleging a substantial change in his earnings.
The hearing on the petition for modification was conducted in March 1994. At the hearing, both parties testified. The trial court also heard testimony from a court-appointed certified public accountant. Following receipt of the evidence, the trial court initially indicated in a letter to the parties’ counsel that Dr. Campbell had shown a substantial change in circumstances in his earnings but failed to establish that the change was permanent. The trial court suggested *1154 that it would reduce the amount of the doctor’s monthly payments but extend the term of rehabilitative alimony. Following a meeting with the parties’ attorneys, at which no additional evidence was taken, the trial court entered an order finding that Dr. Campbell had proven that a substantial and permanent change in circumstances had occurred since the entry of the final judgment and ordered that the rehabilitative alimony payable to Velma Campbell be reduced permanently retroactive to August 1993. This order resulted in a total loss to Velma Campbell of over $170,000 in rehabilitative alimony payments.
We conclude that the record supports the trial court’s finding that Dr. Campbell has suffered a change in income. However, we also conclude that the evidence does not support the trial judge’s finding that this change is based on the loss of contracts or that this change is permanent or was unanticipated. The trial court’s finding in its order to support the change in circumstances states:
According to the court’s expert, all physicians in the same area of specialty are experiencing reductions in income, however, the Petitioner’s reduction is greater than the average income reduction since 1992 by cardiovascular surgeons because of the cancellation of certain contracts for the performance of professional services. This could not have been anticipated and there is no reasonable basis to believe that the contracts will be restored.
The evidence established that following the entry of the final judgment of dissolution Humana Health Care System did not renew its contract with Dr. Campbell. Dr. Campbell testified that loss of the contract constituted about twenty-five percent of his billings. However, Dr. Campbell also testified that he was performing the same number of surgeries notwithstanding the loss of the contract. The doctor also testified that the reductions in reimbursements from Medicare were greater in 1992 and 1993, but as of March 1994, the Medicare payments had shown a one-half percent increase.
A party seeking a modification of an alimony award must prove: (1) a substantial change in circumstances; (2) that the change was not contemplated at the time of the final judgment; and (3) that the change is sufficient, material, involuntary, and permanent in nature. Pimm v. Pimm, 601 So.2d 534 (Fla.1992). Based on Dr. Campbell’s testimony that despite the loss of the Humana contract, he is performing the same number of surgeries, it appeal’s that the loss of the Humana contract was not the cause of Dr. Campbell’s substantial decrease in income. Therefore, we conclude that the loss of the Humana contract is neither sufficient to support a finding of substantial change in circumstances nor that the change is permanent in nature. Moreover, although the trial court’s expert testified that physicians in the same area of specialty are experiencing reductions in income as a result of reduced reimbursements for professional services, Dr. Campbell testified that at least with regard to Medicare reimbursements, the reductions “bottomed out” in 1992-1993, prior to the dissolution of marriage. In fact, he testified that there had been a one-half percent increase in Medicare payments in 1994. There was no other evidence that Dr. Campbell either had lost other professional services contracts or that he was receiving less compensation from existing contracts. In short, the evidence did not support the trial court’s finding that the substantial change in circumstances was caused by the cancellation of certain contracts or a decrease in reimbursements.
The attorneys of both parties presented arguments regarding the significance of Dr. Campbell, a solo practitioner, taking a new partner in 1992, which took place a few months before the trial court entered the final judgment of dissolution. It appears that the trial court did not rely upon that fact in its order modifying the final judgment.
We conclude that the fact that Dr. Campbell acquired a new partner does not support the entry of a modification of the final judgment in this case. Dr. Campbell entered into this partnership a few months before his marriage was dissolved. Although Dr. Campbell testified that he believed the addition of the partner would increase the number of patients in his practice, logic dictates that it would take some time for the new *1155 surgeon to attract additional patients, especially because the new surgeon relocated from another part of the state. Thus, it was foreseeable that bringing in a partner would result in a reduction in income to Dr. Campbell, and he should have contemplated that reduction at the time of the final judgment. Indeed, when Dr. Campbell was asked at the modification hearing what he attributed the $5000 per month decrease in his monthly income between January 1993 and November 1993, Dr. Campbell first responded: “Decreased revenue in the practice.” Dr. Campbell then explained his response by stating, “Now we’re paying two surgeons out of the same pot. We’re doing the same amount, but two surgeons are getting paid. So we have to split it. I hoped the pot would have broaded [sic]. The only way we could have done it is have the pot broaden.” Although Dr. Campbell hoped that the new surgeon would increase the patient base more quickly, we conclude that at the time of the final judgment Dr. Campbell contemplated a reduction in his income as a result of sharing his income with a new partner. Accordingly, Dr. Campbell failed to establish that this change in circumstances was unanticipated as required by Pimm.
Reversed and remanded.
ALTENBERND and LAZZARA, JJ., concur.